UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| DAVID M. DOOLEY | CIVIL ACTION NO. 18-1039 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| MB INDUSTRIES, LLC, ET AL. | MAGISTRATE JUDGE HAYES |

MEMORANDUM RULING

This adversary proceeding arises out of the Chapter 11 bankruptcy of MB Industries, LLC ("MB").[1] David Dooley ("Dooley"), a creditor of MB, filed an adversary proceeding to which MB filed a counterclaim that alleged that Dooley's claims arising out of a promissory note issued by MB are subject to mandatory and equitable subordination. [Record Documents 3-1 at 1–17 and 3-7 at 146–49]. Following stipulations and briefing, the Bankruptcy Court ruled in MB's favor on the counterclaim, declaring that Dooley's claim was contractually subordinated. [Record Document 1-1 at 2]. Dooley appeals, arguing that no party had raised the issue of <u>contractual</u> subordination. [Record Documents 1 and 8 at 5–10]. This Court agrees with the Bankruptcy Court's interpretation of the language of MB's confirmed Chapter 11 plan. [Record Document 1-1 at 8–10]. However, because contractual subordination was not at issue in the counterclaim that the Bankruptcy Court purported to decide, the judgment of the Bankruptcy Court is **VACATED**, and this matter is **REMANDED** for further

---

[1] As part of the bankruptcy, MB has been substituted in the adversary proceeding by MB Industries, LLC Liquidating Trust. As this distinction is not substantively significant for present purposes, this ruling will use MB to refer to both the company and the liquidating trust.

1

proceedings consistent with this opinion.

I. <u>**Background**</u>

MB was part of a network of companies in which Dooley and two trusts associated with the Dooley family owned interests. [Record Documents 1-1 at 1–3 and 3-9 at 25]. On October 27, 2011 (the "Closing Date"), MB entered into an agreement (the "Realignment Agreement") that transferred Dooley's interest in these companies to MB. [Record Documents 1-1 at 3 and 3-9 at 9–24]. MB was then to transfer those interests to the issuing companies for cancellation. [Record Document 3-9 at 10].

In exchange, MB agreed to employ Brenda Dooley, David M. Dooley, and Chris Vallot (the "Dooley Relatives") at salaries of $10,000 per month plus benefits. [Record Documents 1-1 at 3 and 3-9 at 11]. The parties have stipulated that the Dooley Relatives "were never expected by [MB] to show up for work." [Record Document 3-9 at 3]. In addition, MB agreed to issue a unsecured promissory note for $2,750,000 (the "Note"). [Record Documents 1-1 at 3–4 and 3-9 at 11]. The Note provided for payment of the principal, interest, and attorney fees (if the matter entered collections). [Record Document 3-9 at 27–29]. Although interest payments were to begin January 15, 2012, principal payments were due "the later of (i) June 30, 2015 or (ii) the date that the creditors of [MB] are repaid in full all amounts owing to them at the Closing Date." [*Id.* at 27]. The Note included an acceleration clause triggered by late payments or by commencement of bankruptcy proceedings. [*Id.* at 28].

MB was insolvent when it entered the Realignment Agreement. [*Id.* at 3]. Nevertheless, MB made some monthly payments to the Dooley Relatives and paid some of the interest before defaulting. [Record Documents 1-1 at 4 and 3-9 at 3]. On October 2, 2014, MB's

2

creditors petitioned for an involuntary Chapter 7 bankruptcy; the Bankruptcy Court converted the case to one filed under Chapter 11. [Record Documents 1-1 at 2 and 3-16 at 3]. MB proposed a reorganization plan, and Dooley objected to the disclosure statement. [Record Document 3-13 at 1–21]. MB then filed an amended plan (the "MB Plan"); Dooley did not object to the amended plan, which the Bankruptcy Court confirmed on May 25, 2016. [Record Documents 1-1 at 2–3 and 3-15 at 8–91].

The MB Plan establishes eleven classes of creditors. [Record Document 3-15 at 28–29]. Classes 1–5 comprise unimpaired priority and secured claims. [*Id.* at 28]. Claims in the remaining classes are impaired. [*Id.* at 28–29]. Class 6 contains a subset of unsecured claims that do <u>not</u> include claims by Dooley, the two Dooley family trusts, and the Dooley Relatives (collectively, the "Dooley Parties"). [*Id.* at 32]. Class 7 comprises general unsecured claims, including claims by the Dooley Relatives. [*Id.* at 33–34]. Class 8 contains all unsecured contractually subordinated claims, including Dooley's claim arising from the Note:

> With respect to Class 8B (David M. Dooley, Sr.'s Contractually Subordinated Claims), that certain promissory note dated October 27, 2011 from the Debtor made payable to the order of David M. Dooley, Sr. provides that the "principal amount of this promissory note shall be payable the later of (i) June 30, 2015 or (ii) the date the creditors of Maker are repaid in full all amounts owing to them at the Closing Date (as defined in the Realignment Agreement)." Thus, all claims arising from said promissory note are contractually subordinated to all creditors of Maker until they are repaid in full all amounts owing to them as the Closing Date (as defined in the Realignment Agreement). The holder of David M. Dooley, Sr.'s Contractually Subordinated Class 8B Claim, to the extent it is allowed, will receive, in full and final satisfaction of such Claim, its Pro Rata Share of the Liquidating Trust Interests, to be paid after payment to Allowed Claims in Classes 6, 7 and 8A in a manner consistent with any subordination agreement of David M. Dooley, Sr. and/or § 510(a) of the Bankruptcy Code.

[*Id.* at 34].[2] Unsecured equitably subordinated claims are placed in Class 9. [*Id.*]. Classes 10 and 11 hold deficiency claims and equity interests. [*Id.* at 35]. The MB Plan also reserves MB's right to pursue any claims that MB may have against the Dooley Parties. [*Id.* at 89].

Before the Bankruptcy Court confirmed the MB Plan, the Dooley Parties initiated an adversary proceeding to rescind the Realignment Agreement. [Record Document 3-1 at 1–17]. MB filed an answer, which it later amended, and six counterclaims. [Record Documents 3-1 at 18–29 and 3-6 at 1–30]. Counterclaim 6, which is at issue here, seeks mandatory and equitable subordination of the Dooley Parties' claims pursuant to 11 U.S.C. § 510(b)–(c). [Record Document 3-7 at 146–49]. The parties agreed that the Bankruptcy Court could rule based on their stipulations and briefing. [Record Document 1-1 at 2]. The Dooley Relatives also agreed to subordinate their claims, and, upon the parties' joint motion, the Bankruptcy Court dismissed all of the counterclaims other than Counterclaim 6 against Dooley. [Record Documents 1-1 at 2, 3-9 at 4–5, and 3-10 at 1–2]. After reviewing the parties' submissions and stipulations, the Bankruptcy Court issued the ruling from which Dooley has appealed. [Record Document 1-1].

## II. Standard of Review

In reviewing a decision by a bankruptcy court, a district court functions as an appellate court, applying the same standards of review applied by federal appellate courts. *Webb v. Reserve Life Ins. Co. (In re Webb)*, 954 F.2d 1102, 1103–04 (5th Cir. 1992) (citing *In re Hipp, Inc.*, 895 F.2d 1503, 1517 (5th Cir. 1990)). Thus, a bankruptcy court's discretionary decisions are

---

[2] Class 8A contains contractually subordinated claims of another set of creditors. [Record Document 3-15 at 19–20].

4

reviewed under an abuse of discretion standard, findings of fact are reviewed for clear error, and legal conclusions are reviewed de novo. *See In re ASARCO, L.L.C.*, 702 F.3d 250, 257 (5th Cir. 2012) (citing *In re Coho Energy Inc.*, 395 F.3d 198, 204 (5th Cir. 2004); *In re Barron*, 225 F.3d 583, 585 (5th Cir. 2000); *In re Consol. Bancshares, Inc.*, 785 F.2d 1249, 1252 (5th Cir. 1986)). Although an interpretation of a confirmed Chapter 11 plan is a question of law, *In re Advisory Comm. of Major Funding Corp.*, 109 F.3d 219, 222 (5th Cir. 1997) (citing *Killebrew v. Brewer (In re Killebrew)*, 888 F.2d 1516, 1519 (5th Cir. 1989)), a bankruptcy court's interpretation is "entitled to deference," *McGee v. Stumpf (In re O'Connor)*, 258 F.3d 392, 401 (5th Cir. 2001) (citing *In re Weber*, 25 F.3d 413, 416 (7th Cir. 1994); *In re Terex Corp.*, 984 F.2d 170, 172 (6th Cir. 1993)).

### III. <u>Opinion Below and Parties' Arguments</u>

In its ruling, the Bankruptcy Court concluded that Dooley's claim arose from the Note and that the MB Plan had "propose[d] specific treatment of that claim." [Record Document 1-1 at 8]. The Bankruptcy Court acknowledged that the Note appeared to subordinate payments of principal but not of interest and attorney fees. [*Id.* at 9]. Nevertheless, the Bankruptcy Court decided that the express language of the MB Plan required the contractual subordination of Dooley's entire claim. [*Id.*]. Because a confirmed plan binds a creditor who has notice of a plan and fails to object or to appeal confirmation and because Dooley did neither, the Bankruptcy Court then held that Dooley's claim was contractually subordinated to those of MB's other creditors. [*Id.* at 9–10]. In light of its decision about contractual subordination, the Bankruptcy Court declined to reach the issues of mandatory or equitable subordination. [*Id.* at 10].

On appeal, Dooley argues that the Bankruptcy Court violated his due process rights by considering contractual subordination when the parties' briefing and stipulations referred only to the allegations in Counterclaim 6 (i.e., mandatory and equitable subordination). [Record Document 8 at 5–10]. Dooley then argues that neither type of subordination applies to his claim. [*Id.* at 14–25]. Dooley also maintains that the Note is not a subordination agreement and that, even if it is, the Bankruptcy Court failed to specify to which claims and in which amounts his claim is subordinated. [*Id.* at 10–14]. MB responds that the Bankruptcy Court correctly looked to the terms of the MB Plan to identify the appropriate treatment of Dooley's claim and that, even if the Bankruptcy Court erred in doing so, Dooley's claim is subject to contractual, mandatory, and equitable subordination. [Record Document 9 at 18–53]. In reply, Dooley emphasizes MB's reservation of its causes of action against the Dooley Parties to argue that the MB Plan's express language does not control the treatment of his claim. [Record Document 11 at 6–8].

IV. <u>Law and Analysis</u>

A. <u>Jurisdiction</u>

MB argues that this Court lacks appellate jurisdiction because Dooley did not attach the Bankruptcy Court's ruling to the notice of appeal he filed in the Bankruptcy Court. [Record Document 9 at 1]. Under Rule 8003(a)(3)(B) of the Federal Rules of Bankruptcy Procedure, a notice of appeal must "be accompanied by the judgment, order, or decree, or the part of it, being appealed." The appeal must be filed within fourteen days of the bankruptcy court's ruling. Fed. R. Bankr. P. 8002(a)(1). "[F]ailure to file a notice of appeal within the meaning of Rule 8003 during the proper time period defeats jurisdiction." *In re Dorsey*, 870 F.3d 359, 363

(5th Cir. 2017) (citing *In re Alexander*, 472 B.R. 815, 924 (B.A.P. 9th Cir. 2012)).

The Bankruptcy Court ruled on August 1, 2018. [Record Document 1-1 at 1]. On August 9, 2018, Dooley filed a notice of appeal to which he did not attach the Bankruptcy Court's ruling. [Record Document 3-10 at 49–51]. The next day, Dooley filed a second notice of appeal with the ruling attached. [*Id.* at 53–66]. As the corrected notice was filed within the time provided by Rule 8002, this Court finds that it has jurisdiction over this appeal.

B. **Subordination of Claims under the Bankruptcy Code**

The Bankruptcy Code allows subordination of a creditor's claim beneath other claims in three ways. *See* 11 U.S.C. § 510. First, a claim may be subject to contractual subordination under 11 U.S.C. § 510(a), that is, to subordination based on a separate agreement between parties involved in the bankruptcy, *see In re Gen. Homes Corp.*, 134 B.R. 853, 864 (Bankr. S.D. Tex. 1991) (citing *In re Leasing Consultants, Inc.*, 2 B.R. 165, 168 (Bankr. E.D.N.Y. 1980); *In re Holiday Mart, Inc.*, 715 F.2d 430, 433 (9th Cir. 1983)). Mandatory subordination under 11 U.S.C. § 510(b) ensures that "creditors . . . are paid ahead of shareholders in the distribution of corporate assets." *Templeton v. O'Cheskey (In re Am. Housing Found.)*, 785 F.3d 143, 153 (5th Cir. 2015) (quoting *SeaQuest Diving, LP v. S & J Diving, Inc. (In re SeaQuest Diving, LP)*, 579 F.3d 411, 417 (5th Cir. 2009)). 11 U.S.C. § 510(c) authorizes equitable subordination to redress creditors' injuries caused by a claimant's unjust conduct. *In re SI Restructuring, Inc.*, 532 F.3d 355, 360 (5th Cir. 2008).

Counterclaim 6 alleges that the Dooley Parties' claims are subject to equitable and mandatory subordination under 11 U.S.C. § 510(b)–(c). [Record Document 3-7 at 146–49]. When ruling on Counterclaim 6, the Bankruptcy Court declined to decide whether Dooley's

claim is subject to either of these types of subordination. [Record Document 1-1 at 10]. Instead, the Bankruptcy Court found that the MB Plan had determined that Dooley's claim arising from the Note was to be contractually subordinated. [*Id.* at 2].

The Bankruptcy Court's reasoning is somewhat confusing. Contractual subordination refers to the process by which a bankruptcy court gives effect to an agreement in which a creditor accepted subordination of its claim. *See Gernsbacher v. Campbell (In re Equip. Equity Holdings, Inc.)*, 491 B.R. 792, 865 (Bankr. N.D. Tex. 2013). The agreement providing for subordination is separate from the debtor's bankruptcy plan. *See, e.g., id.* at 798, 831, 865 (describing contractual subordination of claims arising from an agreement that became effective seven years before the bankruptcy commenced). Although the Bankruptcy Court purports to "contractually subordinate [Dooley's] claim based on the terms of the confirmed Chapter 11 Plan," [Record Document 1-1 at 10], this statement collapses two analytically distinct steps. First, the Bankruptcy Court held that the MB Plan construed the Note as contractually subordinating Dooley's claim. The court then held that confirmation of the MB Plan prevented Dooley from challenging the MB Plan's treatment of the obligations created by the Note. What the Bankruptcy Court did not do is interpret the Note to determine whether the Note required subordination of Dooley's claim. Instead, the Bankruptcy Court interpreted the language of the MB Plan and found that that language, regardless of whether it was an accurate interpretation of the Note, bound Dooley. [Record Document 1-1 at 9]. Thus, the issue in this appeal is not contractual subordination (i.e., the correct interpretation of the Note). Rather, the issue is the effect of the MB Plan's language on Dooley's claim.

8

C. <u>Chapter 11 Plan Confirmation</u>

Reorganization or liquidation under Chapter 11 begins when a debtor or another party in interest files a plan. 11 U.S.C. § 1121(a),(c). Such plans divide creditors into hierarchical classes, the higher of which receive payment before the lower. *Id.* § 1122; *see In re Greystone III Joint Venture*, 995 F.2d 1274, 1277 (5th Cir. 1991) ("Chapter 11 requires classification of claims against a debtor . . . ."). A bankruptcy plan impairs a creditor's claim "unless . . . the plan . . . leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest." 11 U.S.C. § 1124(a). The plan is sent to the creditors accompanied by a disclosure statement, which must give them sufficient information to enable "a hypothetical investor of the relevant class to make an informed judgment about the plan." *Id.* § 1125(a)(1), (b). After time to review the plan and the disclosure statement, creditors whose interests are impaired may vote to accept or reject the plan. *Id.* § 1126. In addition, any party in interest may object to confirmation of the plan. *Id.* § 1128(b). A plan becomes effective once the bankruptcy court issues a confirmation order. *Id.* § 1129.

"A confirmed liquidation plan is . . . a direct order from the court . . . ." *CHS, Inc. v. Plaquemines Holdings, LLC*, 735 F.3d 231, 239 (5th Cir. 2013). As a direct order, it is binding once the time for appeal has elapsed. *See Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1050 (5th Cir. 1987). "[A] provision in [a] debtor's confirmed plan of reorganization [i]s enforceable and binding, even though a proper and timely objection might have resulted in rendering the provision unenforceable and stricken from the plan." *In re Friedman's, Inc.*, 356 B.R. 766, 773 (Bankr. S.D. Ga. 2006) (citing *Finova Capital Corp. v. Larson Pharmacy Inc. (In re Optical Techs., Inc.)*, 425 F.3d 1294 (11th Cir. 2005)). This is true "[r]egardless of whether that provision is

inconsistent with the bankruptcy laws or within the authority of the bankruptcy court." *Shoaf*, 815 F.2d at 1050; *cf. Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152–53 (2009) (holding that a bankruptcy court's injunction that is not challenged on direct appeal cannot be collaterally attacked even for lack of subject matter jurisdiction). In *United Student Aid Funds v. Espinosa*, the Supreme Court affirmed this principle, holding that a bankruptcy court's confirmation of a plan that discharged a debt without making a finding required by the Bankruptcy Code nevertheless bound a creditor who neither objected nor appealed. 559 U.S. 260, 275 (2010). A Chapter 11 creditor dissatisfied with the treatment of its claim thus has two routes to relief: an objection before confirmation or an appeal after confirmation. *See Shoaf*, 815 F.2d at 1050.

### D. Effect of Dooley's Failure to Object to the MB Plan or to Appeal the Confirmation Order

The MB Plan's treatment of Dooley's claim contains two operative clauses. The first is a suspensive condition: "all claims arising from said promissory note are contractually subordinated to all creditors of Maker until they are repaid in full all amounts owing to them as of the Closing Date." [Record Document 3-15 at 34]. This language reflects but also expands that of the Note, which provides that the principal will be paid "the later of (i) June 30, 2015 or (ii) the date that the creditors of Maker are repaid in full all amounts owing to them at the Closing Date." [Record Document 3-9 at 27]. While the Note requires that MB's creditors be paid all of what they were owed as of October 27, 2011 before Dooley receives any payment of the principal, the Note's suspensive condition does not apply to interest and attorney fees. The MB Plan thus appears to exceed the terms of the Note by extending subordination to "<u>all claims</u> arising from" the Note. [Record Document 3-15 at 34 (emphasis added)].

The next sentence of the MB Plan provides an additional layer of subordination:

> The holder of David M. Dooley Sr.'s Contractually Subordinated Class 8B Claim, to the extent it is Allowed, will receive, in full and final satisfaction of such Claim, its Pro Rata Share of the Liquidating Trust Interests, to be paid after payment to Allowed Claims in Classes 6, 7 and 8A in a manner consistent with any subordination agreement of David M. Dooley, Sr. and/or § 510(a) of the Bankruptcy Code.

[*Id.*]. This second condition construes the Note as a subordination agreement that places Dooley's claim beneath all of the creditors in the higher classes not merely those creditors referenced in the Note.

Dooley disputes three features of the MB Plan. First, he argues that once MB's default triggered the Note's acceleration clause, the Note ceased to be a subordination agreement. [Record Document 8 at 11]. Even if the Bankruptcy Court misinterpreted the Note when approving the MB Plan (a question that this Court does not decide), the confirmation of the MB Plan without an objection to or appeal of that confirmation renders the plan binding on all creditors, including Dooley. Now that the MB Plan has been confirmed, it is no longer a question of whether the Note is a subordination agreement. The question has become whether the MB Plan requires placement of Dooley's claim in Class 8B. This Court agrees with the Bankruptcy Court that Dooley's claim must be classified and satisfied in accordance with the terms of the confirmed plan. [Record Document 1-1 at 9].

Dooley next disputes the treatment of interest and attorney fees. [Record Document 11 at 10 n.2]. The Note requires MB to make quarterly interest payments and to pay Dooley's attorney fees if collection enforcement is required. [Record Document 3-9 at 27, 29]. Unlike the Note's treatment of the principal, the Note does not require that MB's other creditors be paid before Dooley can collect interest and attorney fees. [*Id.*]. As a result, Dooley suggests

that his claim for interest and attorney fees should not have been placed in Class 8B and that in doing so the Bankruptcy Court misinterpreted the Note. [Record Document 11 at 10 n.2]. Here again, this Court will not decide the correct interpretation of the Note because the MB Plan clearly states that "all claims" arising from the Note "are contractually subordinated" and are "to be paid after payment to Allowed Claims in Classes 6, 7 and 8A." [Record Document 3-15 at 34 (emphasis added)]. Because language in a confirmed plan binds creditors even if the provision at issue is legally incorrect, *Shoaf*, 815 F.2d at 1050, interest and attorney fees will not be treated differently than principal.

Dooley also argues that his claim arising from the Note is only subordinated until MB's creditors as of the Closing Date are paid in full. [Record Documents 8 at 13 and 11 at 9–11]. The MB Plan requires that Dooley's claims be paid "after payment to Allowed Claims in Classes 6, 7 and 8A in a manner consistent with any subordination agreement of David M. Dooley and/or § 510(a) of the Bankruptcy Code." [Record Document 3-15 at 34 (emphasis added)]. Dooley argues if the Note is treated as a subordination agreement, then he must be paid in accordance with the Note, which requires payment on "the date that the creditors of Maker are repaid in full all amounts owing to them at the Closing Date." [Record Documents 3-9 at 27 and 8 at 13]. On that basis, he suggests that any subordination lasts only until the creditors referenced in the Note are fully satisfied and asserts that this has occurred. [Record Documents 8 at 13 and 11 at 10–11]. The Bankruptcy Court did not decide this issue. [Record Document 1-1 at 10]. Although the correct interpretation of the MB Plan is a question of law that this Court may decide now, *see In re Advisory Comm. of Major Funding Corp.*, 109 F.3d at 222 (citing *Killebrew*, 888 F.2d at 1519), the application of that interpretation will depend on the

resolution of factual and mixed questions related to the continued existence and extent of MB's debts. Hence, this Court will leave this issue to be addressed by the Bankruptcy Court in the first instance.

Although Dooley argues that he was "blindsided by the Bankruptcy Court," [Record Document 8 at 7], the MB Plan provided all the notice to which Dooley was entitled. Because the interpretation of the MB Plan was not at issue in Counterclaim 6, MB did not need to specifically plead any issues related to the construction of Class 8B or the relationship between that class and the Note. [Record Document 11 at 8–9]. In short, this Court agrees with the Bankruptcy Court that Dooley is bound by the MB Plan, which places his claim in Class 8B. [Record Document 1-1 at 10].

### E. Effect of MB's Reservation of Certain Claims

Dooley also argues that the MB Plan did not finalize the classification of his claim because the MB Plan reserved certain causes of action. [Record Document 11 at 6–8]. Dooley is correct that the MB Plan reserved MB's right to litigate claims against the Dooley Parties, including the six counterclaims alleged in the adversary proceeding. [Record Document 3-15 at 89]. It is also true that "[r]es judicata does not apply where a claim is expressly reserved by [a] litigant in the earlier bankruptcy proceeding." *In re Tex. Wyo. Drilling, Inc.*, 647 F.3d 547, 553 (5th Cir. 2011) (quoting *Browning v. Levy*, 283 F.3d 761, 774 (6th Cir. 2002) (citing *Ries v. Paige (In re Paige)*, 610 F.3d 865, 867 (5th Cir. 2010)). Nevertheless, this rule of law does nothing to advance Dooley's position.

Dooley misconstrues the nature of the reservation of claims in the MB Plan. According to Dooley, "[t]he obvious purpose of the [MB] Plan provision relating to the Retained Causes

of Action was to allow the Trustee to assert and prove a contractual subordination claim if he so desired." [Record Document 11 at 8]. The MB Plan reserves

> [a]ny and all claims against the Dooley Parties . . . . Such claims and causes of action include, but are not limited to: Claims under chapter 5 of the Bankruptcy Code or applicable law, including . . . all claims asserted in the Debtor's counterclaim against the Dooley Parties . . . including . . . Count 6 - subordination of claims under § 510 of the Code.

[Record Document 3-15 at 89]. Counterclaim 6 alleges that the Dooley Parties' claims are subject to mandatory and equitable subordination under 11 U.S.C. § 510(b)–(c). [Record Document 3-7 at 146–49]. The MB Plan provided that the Dooley Relatives' claims would fall into either Class 9 (if they were equitably subordinated) or Class 7 (if they were not). [Record Document 3-15 at 32–34]. Thus, the reservation of Counterclaim 6 meant that MB could continue to litigate the equitable subordination of the Dooley Relatives' claims for their salaries and benefits and the Dooley Relatives could continue to defend themselves and seek a position in a superior class of claimants.

Dooley's situation, however, is not parallel to that of his relatives. The MB Plan places his claim arising from the Note in Class 8B and defines it as contractually subordinated. [*Id.* at 34]. Dooley did not object to the confirmation of the MB Plan nor did he appeal the confirmation order. In effect, Dooley asks this Court to conclude that a <u>debtor's</u> reservation of a counterclaim in an adversary proceeding relieves a <u>creditor</u> of the obligation to object or appeal within the main bankruptcy. This Court rejects Dooley's attempt to defeat the language of the MB Plan within the context of a trial on MB's counterclaim.

Following the dismissal of Counterclaims 1–6 as to the Dooley Relatives and Counterclaims 1–5 as to Dooley, the remaining counterclaim alleged that Dooley's claim

14

arising from the Note is subject to mandatory and equitable subordination. [Record Document 3-10 at 1–2]. That was the issue that the Bankruptcy Court was to decide. It is perhaps arguable that MB's reservation of "[a]ny and all claims against the Dooley Parties" included the possibility that further litigation would determine that Dooley's claim arising from the Note was to be placed not in Class 8B but instead in a superior class of unsecured claims, [Record Document 3-15 at 89], but this would be a highly strained reading of MB's generic reservation of its causes of action. Moreover, a confirmed plan binds all creditors, not merely those directly affected by a particular provision. 11 U.S.C. § 1141(a) ("[T]he provisions of a confirmed plan bind . . . any creditor . . . whether or not the claim or interest of such creditor . . . is impaired under the plan and whether or not such creditor . . . has accepted the plan."); *In re Pavlovich*, 952 F.2d 114, 117 (5th Cir. 1992) (citing 11 U.S.C. § 1141(a)) ("But for debts excepted under § 523, confirmation of the Plan bound the debtor and all then-existing creditors who had notice of the case."). The MB Plan provides for a specific treatment of Dooley's claim arising from the Note. [Record Document 3-15 at 33–34]. MB's other creditors were entitled to rely on the MB Plan's actual language when determining how to vote and whether to object. MB and the Dooley Parties may have intended to allow further litigation regarding the classification of Dooley's claims arising from the Note. Nevertheless, this Court cannot give effect to that intention when doing so might prejudice other creditors who reasonably relied on the language of the MB Plan.

The MB Plan asserted that Dooley's claim arising from the Note fell into Class 8B because the Note contractually subordinated his claim. [*Id.* at 34]. MB had no need to reserve in the MB Plan a right to litigate an issue already addressed within the plan itself. Dooley had

15

an opportunity to object to the treatment of his claim. He did not avail himself of that opportunity. He cannot now rely on a provision designed to protect MB's rights in order to press for a different treatment of his claim.

### F. Effect of the Parties' Stipulations

Dooley also argues that the parties' pretrial stipulations were a settlement to which the Bankruptcy Court failed to give effect when it based its ruling on contractual subordination rather than on equitable or mandatory subordination. [Record Document 8 at 5–10]. Dooley's premise is correct; contractual subordination is not an issue in Counterclaim 6. [Record Document 3-7 at 146–49]. Therefore, a ruling that Dooley's claim is contractually subordinated is not a legally acceptable resolution of Counterclaim 6 and so must be vacated.[3] If MB wishes to continue to pursue the counterclaim on remand, the Bankruptcy Court must rule on the issues actually presented.

Nevertheless, from the correct premise, Dooley draws the incorrect conclusion that the contractual subordination of Dooley's claim arising from the Note "was excluded pursuant to the compromise agreement wherein certain of the Dooley Parties gave up claims in return for an agreement by the Debtor that its potential relief would be limited to subordination under Sections 510(b) and (c)." [Record Document 8 at 9]. The counterclaim is, of course, limited to mandatory and equitable subordination. But the counterclaim in the Dooley Parties' adversary proceeding is not the only proceeding that affects Dooley's claim. His claim was

---

[3] Because this Court vacates the Bankruptcy Court's ruling, this Court need not address Dooley's arguments that a ruling by this Court on the basis of mandatory or equitable subordination would be a ruling on issues not passed on below or that addressing certain new arguments raised by MB would unfairly modify the judgment in MB's favor. [Record Document 11 at 11–15].

also, of necessity, affected by the confirmation of the MB Plan within the bankruptcy itself. A ruling in Dooley's favor on Counterclaim 6 will leave his claim in Class 8B (at least initially); a ruling in MB's favor might result in placement of Dooley's claim in a different class.

V. **Conclusion**

Because the Bankruptcy Court did not decide either of the issues before it, the judgment in MB's favor on Counterclaim 6 is **VACATED**, and this matter is **REMANDED** for further proceedings consistent with this opinion.

Given the binding effect of plan confirmation, the starting place for Dooley's claim is Class 8B. On remand, the Bankruptcy Court must rule on the issues actually raised in Counterclaim 6 (i.e., mandatory and equitable subordination) unless MB is willing to dismiss the counterclaim because MB is satisfied with the MB Plan's treatment of Dooley's claim arising from the Note. In order to determine how much Dooley is entitled to recover in the bankruptcy, the Bankruptcy Court may also need to determine the precise extent of the contractual subordination recognized in the MB Plan, that is, whether Dooley's claim arising from the Note should receive a different treatment once the creditors referenced in the Note have been fully satisfied.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 12th day of August, 2019.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE